# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **LILLIE M. MIDDLEBROOKS,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 09-02048 (ESH) |
| **GODWIN CORPORATION,** *et al.*, | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Plaintiff Lillie Middlebrooks, proceeding *pro se*, has sued defendants Godwin Corporation ("Godwin"), Janice Williams, Karen P. Watts, and the District of Columbia ("the District") for discrimination on the basis of race and color, retaliation, and hostile work environment in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; discrimination on the basis of race and color in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; discrimination, retaliation, and hostile work environment in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01-2-1404.04; promissory estoppel; negligent supervision; and wrongful termination in violation of D.C. public policy. Before the Court are defendants' motions to dismiss[1] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Upon review of the parties' legal memoranda and the applicable law, the Court will grant defendants' motions.

---

[1] The District and Watts filed a motion to dismiss on March 26, 2010. Godwin and Williams filed a motion to dismiss on May 17, 2010.

**BACKGROUND**

Plaintiff alleges that in 2008, Godwin was awarded a two-year contract from the District of Columbia Department of Health ("DCDOH") to provide healthcare staffing for the District of Columbia Healthy Start Program ("Healthy Start"). (Compl. ¶ 11.) According to plaintiff, Healthy Start is federally funded by the U.S. Department of Health and Human Services and is "designed to reduce infant mortality [and] premature infant births and to promote healthy lifestyles among pregnant and parenting women residing in Wards 5, 6, 7, and 8 of the District of Columbia." (*Id.* ¶¶ 16-17.) Plaintiff alleges that she was interviewed and hired by defendant Williams, an African-American female, in July 2008 as a "contract at will employee" of Godwin to work as a Registered Nurse on behalf of Godwin for the DCDOH. (*Id.* ¶¶ 6, 9, 12.) When plaintiff reported for work at the DCDOH on or about August 1, 2008, defendant Watts, also an African-American female, assigned her to work as a nurse case manager in Healthy Start to assist with a pilot program focused on high risk pregnant and parenting women. (*Id.* ¶¶ 8, 15, 27.) Watts also assigned two family support workers, Kenya Singleton and Erica Proctor, to work in the pilot program with plaintiff. (*Id.* ¶ 28.) According to plaintiff, Singleton is a "dark skinned African-American female" and Proctor is a "milk chocolate African-American female." (*Id.* ¶¶ 29, 31.)

Plaintiff alleges that after a month of working with Singleton and Proctor, she filed a written complaint of a hostile work environment against them with Watts. (*Id.* ¶¶ 34-35.) According to plaintiff, she was subjected to a hostile work environment when she overheard Proctor and Singleton making "rude condescending" remarks about plaintiff to another employee

and about Healthy Start clients' economic status.² (*Id.* ¶¶ 37-41.) Plaintiff also claims that she overheard a "sexual[ly] explicit" conversation among Singleton, Proctor, and other Godwin employees that "primarily focused on their sex lives." (*Id.* ¶ 42.) Plaintiff asserts that based on this behavior, she requested reassignment to a different program. (*Id.* ¶ 43.) Although her request was denied, another case manager volunteered to oversee Singleton while plaintiff supervised a different support worker, Claudia Queen. (*Id.* ¶¶ 45-46.) Plaintiff alleges that Proctor then made false allegations against Queen, and that based on those allegations and other unspecified "conniving and devious acts" by Singleton and Proctor, she filed complaints against them with Williams on October 2, 2008, stating that their behavior subjected plaintiff to "an extreme hostile work environment." (*Id.* ¶¶ 47-51, 54.) According to plaintiff, despite Williams' promises to stop the "hostile working conditions," Williams ignored plaintiff's requests. (*Id.* ¶¶ 54-55.)

Plaintiff alleges that in October 2008, she encountered several difficulties with Proctor and Singleton as a result of their purportedly substandard care for Health Start clients. (*Id.* ¶¶ 57-63.) According to plaintiff, Singleton violated Healthy Start policy by touching the stomach of a Healthy Start client, taking her blood pressure, and inquiring of her weight. (*Id.* ¶¶ 63-66, 68.) Plaintiff maintains that upon learning this information, she made an appointment with Watts for October 27, 2008. (*Id.* ¶¶ 64, 69.) Plaintiff alleges that she also informed Williams of Singleton's actions, but that Williams failed to follow up with plaintiff or with Singleton. (*Id.* ¶ 73.) On October 27, 2008, plaintiff met with Watts, Singleton, Proctor, and two other women. (*Id.* ¶ 74.) During the meeting, plaintiff claims that Singleton and Proctor lodged a complaint

---

² In particular, plaintiff alleges that in reference to a Healthy Start client, Singleton stated, "She should be ashamed of herself for living in all that filth." (Compl. ¶ 40.) Plaintiff also alleges that Singleton stated that the client is "disgusting and nasty" and she Singleton "hop[ed] that she don't bring that newborn baby back to that filthy house." (*Id.*)

3

against plaintiff for failing to drop a client from Healthy Start. (*Id.*) Plaintiff then alleges that Proctor left the meeting so that plaintiff and the other women could ask Singleton about the allegations that she had touched the stomach of the Healthy Start client. (*Id.* ¶ 75.) Although Singleton denied touching the client, plaintiff informed Watts and the others that she believed the client and that she protested Singleton's actions. (*Id.* ¶¶ 75-91.) According to plaintiff, she informed Watts that it was "imperative" that they "safeguard the care" of Healthy Start clients. (*Id.* ¶ 91.) Plaintiff alleges that although Watts stated that she would investigate the claims against Singleton, and although plaintiff informed Williams of the events at the October 27, 2008 meeting, Watts did not inform plaintiff of the results of the investigation of Singleton. (*Id.* ¶¶ 94-95.)

Plaintiff further claims that at a mandatory staff meeting on October 30, 2008, she was subjected to a hostile work environment when she witnessed Watts "scream and yell" at another nurse case manager. (*Id.* ¶ 96.) She maintains that after that meeting, and after she observed Williams meet with Watts, Williams ordered plaintiff to leave the building, effectively terminating her. (*Id.* ¶ 97.) Plaintiff alleges that she was never provided with a written or verbal explanation for why she was terminated. (*Id.* ¶¶ 103-104.) However, she asserts that she was terminated based on her race and color and because she reported a hostile work environment and protested the "unfair" and "illegal" treatment of Healthy Start clients. (*Id.* ¶¶ 106-118.)

Plaintiff filed the instant lawsuit on October 30, 2009. She alleges claims of race and color discrimination under 42 U.S.C. § 1981, the DCHRA, and Title VI (Counts 1, 2, 3, 4, 13, 14, 15, 16, 17, and 18); retaliation under 42 U.S.C. § 1981 and the DCHRA (Counts 5, 6, 7, 8, 19, 20, 21, and 22); race-based hostile work environment under 42 U.S.C. § 1981 and the DCHRA (Counts 9, 10, 11, 12, 23, 24, 25, and 26); aiding and abetting in unlawful retaliation

4

under the DCHRA (Counts 27, 28, 29, and 30); promissory estoppels (Counts 31 and 32); negligent supervision (Counts 33, 34, 35, and 36); and wrongful termination in violation of District of Columbia public policy (Counts 37, 38, 39, and 40).

## ANALYSIS

### I. STANDARD OF REVIEW

As the Supreme Court held in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), "[t]o survive a motion to dismiss [under Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint must be dismissed under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557) (internal quotation marks omitted)). The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in her favor. *Maljack Prod., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995). However, "the [C]ourt need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Twombly*, 550 U.S. at 555 (Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Although "[a] *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Atherton v. D.C. Office of the Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)), "a *pro se* complainant must plead 'factual matter' that permits the court to

infer 'more than the mere possibility of misconduct.'" *Id.* at 681-82 (quoting *Iqbal*, 129 S. Ct. at 1950).

## II. PLAINTIFF'S FEDERAL CLAIMS

### A. 42 U.S.C. § 1981 CLAIMS

Plaintiff maintains that defendants discriminated against her on the basis of her race and color (Compl. ¶¶ 119-124), and retaliated against her on the basis of complaints she filed alleging a hostile work environment (*id.* ¶¶ 125-130), in violation of § 1981. She further alleges that defendants subjected her to a hostile work environment in violation of the same statute. (*Id.* ¶¶ 131-135.) The Court finds that plaintiff has failed to allege claims upon which relief can be granted under § 1981.

#### 1. No Enforceable Contract with the District and Watts

The District and Watts contend that plaintiff's § 1981 claims against them must be dismissed because plaintiff was never an employee of the District and therefore has no enforceable contract with it. (Mem. of P. & A. In Supp. of Defs.' Mot. to Dismiss the Compl. ["District Mem."] at 8.) "'[A] plaintiff cannot state a claim under § 1981 unless [she] has (or would have) rights under the existing (or proposed) contract that [she] wishes to make and enforce.'" *See Burnett v. Sharma,* 511 F. Supp. 2d 136, 141 (D.D.C. 2007) (quoting *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 479-80 (2006) ("Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship.")).[3]

---

[3] In relevant part, § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and

Here, plaintiff's complaint fails to allege that she was ever employed by or had a contract with the District. (*See* Compl. ¶ 9 (plaintiff "accepted a position as [nurse] for Godwin . . . to work as a contractor on behalf of Godwin. . . for the District of Columbia Department of Health"); *see id.* ¶ 12 (plaintiff's offer letter stated that she was "a contract at will employee of Godwin").)[4] As such, she cannot state claims against the District or Watts under § 1981.

Plaintiff's citation to *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1339 (2d Cir. 1974), is inapposite. There, the court held that a paying guest of a club member had an enforceable contract with the club when the guest paid the entry fee (*i.e.*, the payment of the fee created a contract) for purposes of bringing a claim under § 1981. *Id.* at 1339. Alternatively, the court suggested that the contract between the member and club, of which the member's guest

---

> equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a).

[4] In her opposition to Godwin's motion to dismiss, plaintiff states that she can demonstrate that she "had well over 55 enforceable contracts with the District of Columbia, Godwin Corporation, Janice Williams, and Karen Watts." (Pl.'s Opp'n to Godwin Corp. & Janice Williams' Mot. to Dismiss Pl.'s Compl. ["Godwin Opp'n"] at 21.) She goes on to state:

> [Plaintiff] entered into numerous contracts with the District of Columbia, Godwin Corporation, Janice Williams, and Karen Watts to provide case management services to each DC Healthy Start client that the Plaintiff enrolled into the DC Healthy Start Program. The DC Healthy Start clients are enrolled into the DC Healthy Start program for the length of their pregnancy and until the child turns two years of age. Therefore, [plaintiff] has an enforceable contract for each and every individual that [she] enrolled into the DC Healthy Start Program."

*Id.* at 21-22. Even if one ignores the obvious problem that the enrollment of a Healthy Start client with the program would not constitute an enforceable contract between *plaintiff* and the District, plaintiff failed to include these allegations in her complaint, and plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss. *See*, *e.g.*, *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (quoting cases); *see also Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C. 2006) ("[T]he Court does not, and cannot, consider claims first raised in the plaintiff's opposition.").

was a third-party beneficiary,[5] was also enforceable by the guest. *Id.* Here, plaintiff alleges only that she had an employment contract with Godwin (Compl. ¶ 12), and that Godwin had a two-year contract with the District to provide health care staffing to Healthy Start. (*Id.* ¶ 11.) Plaintiff does not allege, nor can it be inferred from her complaint, that a contract between Godwin and the District by which the District pays Godwin to staff Healthy Start was intended to benefit plaintiff. As such, plaintiff's allegations of discrimination, retaliation, and hostile work environment against the District and Karen Watts must be dismissed for failure to meet the requirements of § 1981. *See Burnett,* 511 F. Supp. 2d at 141.

### 2. Discrimination

Defendants Godwin and Williams argue that the Court must dismiss plaintiff's § 1981 discrimination claims because plaintiff merely asserts that defendants terminated her employment and took other actions against her on the basis of race and color without providing any specific factual allegations that support an inference of discrimination on those bases. (Mem. of P. & A. In Supp. of Defs.' Godwin Corp. and Janice Williams' Mot. to Dismiss ["Godwin Mem."] at 10; *see also* Compl. ¶¶ 106-118.) "[T]o state a claim for racial discrimination under Section 1981, a plaintiff must allege that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981." *Mazloum v. Dist. of Columbia Metro. Police Dep't,* 522 F. Supp. 2d 24, 37 (D.D.C. 2007) (internal citation and quotations omitted). However, "[i]n order to pursue a cause of action under § 1981, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to

---

[5] A third-party beneficiary has rights under a contract although she may not be a party to said contract. *See*, *e.g.*, Restatement (Second) of Contracts § 304, p. 448 (1981) ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.").

pursue relief. Rather, plaintiff must allege some facts that demonstrate that his race was the reason for [a] defendant's actions." *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990); *see also Mesumbe v. Howard Univ.*, No. 09-1582, 2010 WL 1539816, at *4-*5 (D.D.C. Apr. 19, 2010); *Fagan v. U.S. Small Bus. Admin.*, 783 F. Supp. 1455, 1464 (D.D.C. 1992) ("To establish a *prima facie* case under § 1981, the plaintiff must demonstrate a racially discriminatory purpose.").

Even reading plaintiff's complaint in the light most favorable to her and construing all reasonable inferences in her favor, the Court can find no facts that support an inference of discrimination. There is nothing in the complaint that "permit[s] the [C]ourt to infer more than the mere possibility of misconduct" on the part of Godwin and Williams, meaning that plaintiff has failed to show that she is entitled to relief. *Iqbal*, 129 S. Ct. at 1950. The only suggestion that plaintiff's race or color played any role in her interactions with Godwin and Williams are plaintiff's conclusory statements that she was "terminated . . . based on [her] race" and "color." (Compl. ¶¶ 106-107.) These two allegations "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" and, because of their conclusory nature, are "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950-51 (quoting *Twombly*, 550 U.S. at 555). And none of the factual allegations in plaintiff's complaint suggest a racially discriminatory motive for defendants' treatment of plaintiff. *See Alexander v. Wash. Gas Light Co.*, 481 F. Supp. 2d 16, 30 (D.D.C. 2006) (dismissing § 1981 claim where plaintiff "has not pled any facts or made any suggestion of racially discriminatory motive on the part of [d]efendants").

Although Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief" and not a specific quantity of facts, Fed. R. Civ. P. 8, "it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions." *Iqbal*, 129 S. Ct. at 1950. Because plaintiff has not pled any factual content that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 1949, it must dismiss plaintiff's § 1981 discrimination claims.

### 3. Retaliation

Defendants contend that plaintiff has failed to state a claim for retaliation because she has not alleged that she engaged in protected activity triggering the protections of § 1981. (Godwin Mem. at 13-14.) A prima facie case for retaliation requires that the plaintiff suffer an adverse action because he or she engaged in protected activity, such as opposing discrimination. *Carney v. Am. Univ.*, 151 F.3d 1090, 1092-93 (D.C. Cir. 1998). Not every complaint by an employee entitles the employee to protection from retaliatory action under § 1981. *See Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination"—that is, discrimination on the basis of a protected characteristic. *Id.*; *see also Hawkins v. 115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998) ("[T]o be actionable under § 1981, the retaliation must have been in response to the claimant's assertion of rights that were protected by § 1981."). Here, plaintiff alleges that she lodged complaints with her superiors regarding alleged unspecified "rude and condescending" comments made by Proctor and Singleton about plaintiff (Compl. ¶ 37); comments about the economic status and living conditions of Healthy Start clients (*id.* ¶¶ 38-42); a conversation plaintiff overheard among Proctor, Singleton, and other regarding their sex lives (*id.* ¶ 42); alleged false allegations made by Proctor and Singleton about another Healthy Start employee (*id.* ¶¶ 51-54); and the alleged inappropriate treatment (*i.e.*, touching of stomach, taking of blood pressure, and asking about weight) of a Healthy Start client by Singleton. (*Id.* ¶¶ 90-91.)

It is axiomatic that none of plaintiff's alleged complaints concerned discrimination based on race or color (*i.e.*, the characteristics protected by § 1981, *see DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 40 (D.D.C. 2008) ("Section 1981 prohibits discrimination *on the basis of race* in making and enforcing contracts, including employment contracts.") (emphasis added)). Indeed, plaintiff states repeatedly that she was terminated in retaliation for "protesting the unfair treatment rendered toward D.C. Healthy Start clients" (Compl. ¶ 110); "reporting unsafe health care practices and for reporting unauthorized healthcare practices" (*id.* ¶ 111); "reporting inappropriate touching behavior and inappropriate groping behavior bestowed upon a D.C. Healthy Start client" (*id.* ¶¶ 112-113, 117-118); and for reporting unsafe practices and illegal activity (*id.* ¶¶114-116.) None of these allegations include any suggestion that the behavior plaintiff reported was discriminatory on the basis of race and/or color. In fact, plaintiff fails to state the race of any of the Healthy Start clients she references or make any allegations that the unfair treatment of them (or "rude" comments directed toward plaintiff) were racially motivated. *See Mesumbe*, 2010 WL 1539816, at *5 (dismissing disparate treatment claim where plaintiff failed to "indicate the race, ethnicity, or national origin of the students who allegedly received preferential treatment"). As for plaintiff's claim that she reported a hostile work environment based on a conversation she overheard regarding other employee's sexual preferences, there is no suggestion that this conversation constituted a hostile work environment because of plaintiff's race or color. *See Brown v. Dist. of Columbia*, 251 F. Supp. 2d 152, 163 n.6 ("[I]t is well established that 42 U.S.C. § 1981 does not provide a cause of action for sex discrimination.") (citing *Runyon v. McCrary,* 427 U.S. 160, 167 (1976)). As such, even assuming that plaintiff's conclusory allegations that defendants took adverse action against her

based on her complaints are true, plaintiff has failed to state a claim of retaliation under § 1981, and these claims must be dismissed.

### 4. Hostile Work Environment

Defendants also contend that plaintiff has failed to state a hostile work environment claim under § 1981 (Godwin Mem. at 14-16), and the Court agrees. The conduct alleged by plaintiff, including an instance of overheard "rude condescending" comments by Singleton about plaintiff, comments about the economic status and living conditions of Healthy Start clients (whose race is unspecified in the complaint), alleged false allegations by Proctor regarding Godwin employee Queen, and an overheard conversation about the sexual preferences of other Godwin employees over the course of a one-month period, fails to demonstrate discriminatory conduct "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986) (internal quotations and citation omitted); *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal quotations and citation omitted). Moreover, plaintiff fails to allege that any of the events she maintains constituted a hostile work environment were based on her race or color. "To make out a *prima facie*[6] case of hostile work environment, 'plaintiff must show that the alleged harassment was based on her membership in a protected class, and that her employer knew or should have known of the harassment and failed

---

[6] Although a plaintiff need not establish a *prima facie* case of discrimination in the complaint, *Ware v. Nicklin Assocs., Inc.,* 580 F. Supp. 2d 158, 164 (D.D.C. 2008), courts can explore a plaintiff's *prima facie* case at the dismissal stage to determine "whether the plaintiff can ever meet [her] initial burden to establish a prima facie case." *Rochon v. Ashcroft,* 319 F. Supp. 2d 23, 29 (D.D.C. 2004), *rev'd on other grounds sub nom. Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006); *see also Ervin v. Howard Univ.,* 562 F. Supp. 2d 58, 70 (D.D.C. 2008) ("A plaintiff is not required to plead a *prima facie* case of hostile work environment in the complaint; however, the alleged facts must support such a claim.").

to take any remedial action.'" *E.g.*, *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 219 (D.D.C. 2009) (quoting *Hunter v. Clinton,* 653 F. Supp. 2d 115, 124 (D.D.C. 2009)). None of the allegations plaintiff makes in support of her hostile work environment claims suggests that the alleged harassment was based on her race or color. Indeed, the majority of the comments cited by plaintiff were allegedly made about Healthy Start clients, whose race (or races) are unspecified in the complaint. Plaintiff alleges that defendants "racially abused, victimized, and traumatized [her] by subjecting [her] to racially offensive and flagrant intimidating discriminatory conduct" (Compl. ¶ 133), but her complaint is devoid of any factual allegations to support such a claim, and the Court need not accept such a conclusory statement as true. *Iqbal*, 129 S. Ct. at 1950. Although, the comments plaintiff alleges may be considered offensive or rude, she has not shown how such remarks unreasonably interfered with her work performance or that they were based on her race or color. As such, the Court will dismiss plaintiff's § 1981 hostile work environment claims.

### B. TITLE VI (42 U.S.C. § 2000d) CLAIMS

Plaintiff alleges that Godwin and the District violated Title VI, 42 U.S.C. § 2000d, because these defendants receive federal funding and engaged in intentional discrimination based on her race, color, and/or national origin. (Compl. ¶¶ 136-141.) Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. However, Title VI does not provide a cause of action against a program receiving federal funding based on the program's *employment* practices except in a very limited number of cases—namely, where the primary goal of the federal funding is to provide employment. As 42 U.S.C. § 2000d-3 states, "[n]othing

contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency[7] with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment." *See also Johnson v. Transp. Agency*, *Santa Clara County,* 480 U.S. 616, 628 n.6 (1987) (citing 42 U.S.C. § 2000d-3 and noting intent of Congress that Title VI not "impinge" on Title VII, which prohibits discriminatory employment practices).

Plaintiff states in her complaint that the "D.C. Healthy Start Program is federally funded" and "is designed to reduce infant mortality, to reduce premature infant births, and to promote healthy lifestyles among pregnant and parents women residing in Wards 5, 6, 7, and 8 of the District of Columbia." (Compl. ¶¶ 16-17.) Because plaintiff fails to allege that the primary purpose of the federal funding to the DCDOH or Healthy Start is to provide employment[8] or that

---

[7] It is unresolved whether, and to what extent, Title VI provides a private right of action for compensatory and/or punitive damages, which plaintiff seeks (*see* Compl. ¶ 141 (claiming humiliation, loss of self-esteem, undue stress, mental anguish, emotional and psychological harm, economic losses, and loss of earning capacity)), in addition to front and back pay, declaratory judgment, and injunctive relief. *See*, *e.g.*, *Dorsey v. U.S. Dep't of Labor*, 41 F.3d 1551, 1554 (D.C. Cir. 1994) (declining to decide whether to judicially infer private right of action for compensatory damages under Title VI). Because the Court finds that 42 U.S.C. § 2000d-3 precludes any claim against defendants based on Godwin's employment practices, it need not address this issue.

[8] In her opposition to the motion to dismiss filed by defendants Godwin and Williams, plaintiff argues, without support, that the National Healthy Start Association, Inc., "states that the Healthy Start Projects have given real jobs to hundreds of unemployed women, particularly those on welfare." (Godwin Opp'n at 14.) However, again, plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss. *See*, *e.g.*, *Calvetti*, 346 F. Supp. 2d at 107; *see also Coll. Sports Council*, 421 F. Supp. 2d at 71 n.16. Moreover, plaintiff apparently refers to the goal of Healthy Start "to assist . . . clients to obtain suitable and sustainable employment." (Godwin Opp'n at 14); *see also id.* (program provides "job training" for clients).) Plaintiff does not allege that the federal funds received by Healthy Start have the primary objective of "providing" employment, as required by Title VI. *See* 42 U.S.C. § 2000d-3. Rather, she claims that the funds help defray the costs of a program that assists clients with a variety of services, including finding sustainable employment—not with the program itself, but elsewhere. Because plaintiff has made no allegation that the federal funds at issue are primarily intended to employ her or other individuals, she has not stated a claim under Title VI. *See*, *e.g.*, *Luallen v. Guilford*

the intended beneficiaries of those funds are employees like plaintiff, the Court agrees with the defendants' argument[9] that plaintiff has failed to plead an actionable claim under Title VI. *See*, *e.g.*, *Thornton v. Amtrak*, 16 F. Supp. 2d 5, 7 (D.D.C. 1998) (dismissing Title VI claims under Rule 12(b)(6) where plaintiff failed to show that "that 'a primary objective' of federal financial assistance to [defendant] is to provide employment or that employees are 'primary' or 'intended' beneficiaries of federal funds"); *Temengil v. Trust Territory of Pac. Islands*, 881 F.2d 647, 653 (9th Cir. 1989) (affirming dismissal of Title VI claims where primary purpose of program at issue was not employment, but could be obtained only by hiring and training individuals to support program objectives); *Murphy v. Middletown Enlarged City Sch. Dist.*, 525 F. Supp. 678, 708-09 (S.D.N.Y. 1981) (relying on Congress' stated legislative purpose in holding that plaintiff lacked standing to bring claim under Title VI because none of the programs at issue were designed with the primary objective of providing employment).

---

*Health Care Ctr.*, No. 02-cv-738, 2003 WL 23094916, at *11 (M.D.N.C. Dec. 18, 2003) (denying Title VI claims where defendant "receives no federal funding for the purpose of employing individuals").

[9] There is some question in the decisional authority as to whether the limitation in 42 U.S.C. § 2000d-3 applies only to actions by federal departments and agencies or to private actions under Title VI, as well. *See Grimes v. Superior Home Health Care of Middle Tenn., Inc.*, 929 F. Supp. 1088, 1094 (M.D. Tenn. 1996) (noting that clear language of § 2000d-3 "indicates its applicability is only to federal departments or agencies" and does not reference private causes of action that may be judicially implied). However, the Court concurs with the many courts that have interpreted § 2000d-3 as limiting private rights of action, as well. *See*, *e.g.*, *Thornton v. Amtrak*, 16 F. Supp. 2d 5, 7 (D.D.C. 1998); *Grimes*, 929 F. Supp. at 1094 (limiting private right of action under Title VI "to those employers who receive federal funds 'where a primary objective of the Federal financial assistance is to provide employment'" and listing cases) (quoting 42 U.S.C. § 2000d-3); *see also Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 631 (1984) ("[42 U.S.C. § 2000d-3] limits the applicability of Title VI to 'employment practice[s] . . . where a *primary objective* of the federal financial assistance is to provide employment.'") (emphasis in original) (quoting 42 U.S.C. § 2000d-3); *Assoc. Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (1st Cir. 1981) (holding that 42 U.S.C. § 2000d-3 limits private causes of action under Title VI); *Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672, 674-75 (8th Cir. 1980) ("[I]n [private] suits charging employment discrimination under title VI, one of the purposes of the federal financial assistance must be to provide employment.") (abrogated on other grounds).

15

Plaintiff argues in her oppositions that the only way to achieve the Healthy Start Program goals is to "hire Registered Nurses." (Pl.'s Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. at 3; *see also id.* at 5 (maintaining that D.C. Healthy Start is federally funded for 48 full time employment positions); Godwin Opp'n at 13 (same).) She further argues that Healthy Start "cannot reduce infant mortality without providing employment in order to reduce infant mortality." (Godwin Opp'n at 13.) But the hiring of employees to implement program objectives is incidental to Healthy Start's overall goals regarding maternal and infant health. As the Ninth Circuit observed when rejecting a similar argument in the *Temengil* case, such "extended logic" would empty § 2000d-3 of meaning and would protect only a few, if any, programs that employ people in order to carry out their primary objectives from suits under Title VI *and* Title VII. 881 F.2d at 653; *see also Johnson,* 480 U.S. at 628 n.6 (Congress added § 2000d-3 because of its concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII); *N. Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 528-30 n.20 (1982) (§ 2000d-3 was added to indicate or clarify limitation on the class of beneficiaries of Title VI); *United Steelworks of Am. v. Weber*, 443 U.S. 193, 207 n.6 (1979) ("Title VII and Title VI . . . cannot be read *in pari materia*."). Accordingly, plaintiff does not meet the statutory requirements to state a claim under Title VI. *See Thornton*, 16 F. Supp. 2d at 7.

## III.    PLAINTIFF'S STATE LAW CLAIMS

In addition to her federal claims, plaintiff asserts the following state law causes of action: discrimination and retaliation in violation of the DCHRA; promissory estoppel; negligent supervision; and wrongful termination in violation of D.C. public policy. When the federal-law claims providing the Court with original jurisdiction have been dismissed, the Court "may

decline to exercise supplemental jurisdiction" over the remaining state-law claims. 28 U.S.C. § 1367(c)(3). In deciding "whether to exercise jurisdiction," the Court "should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7. In light of the dismissal of plaintiff's federal claims, there is no reason for the Court to retain jurisdiction over the remaining common law and D.C. statutory claims. The Court will therefore dismiss these claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). *See Ekwem v. Fenty*, 666 F. Supp. 2d 71, 80-81 (D.D.C. 2009).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss plaintiff's § 1981 and Title VI claims with prejudice. The Court dismisses plaintiff's remaining state law claims without prejudice for lack of jurisdiction. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: June 25, 2010